FILED

March 3 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0751

DA 13-0751

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 70

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

MICHAEL DUONG,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Seventh Judicial District,
                  In and For the County of Dawson, Cause No. DC 12-084
                  Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Wade Zolynski, Chief Appellate Defender, Koan Mercer, Assistant
           Appellate Defender, Helena, Montana

       For Appellee:

           Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
           Attorney General, Helena, Montana

           Olivia Norlin-Rieger, Dawson County Attorney, Marvin L. Howe, Deputy
           County Attorney, Glendive, Montana

                                 Submitted on Briefs:  January 28, 2015
                                       Decided:  March 3, 2015

Filed:

                                                            
                                             Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Michael Duong (Duong) pled no contest to the charge of possession of dangerous drugs with intent to distribute and reserved his right to appeal. He appeals from an order of the Seventh Judicial District, Dawson County, denying his motion to suppress and from the final judgment ordering Duong to pay the cost of his interpreter and imposing a ten-percent administration fee. We affirm in part, reverse in part and remand.

¶2 Michael Duong presents the following issues for review:

¶3 Issue One: Whether the District Court correctly determined that Trooper Muri had particularized suspicion to stop Duong's vehicle.

¶4 Issue Two: Whether the District Court erred by ordering Duong to pay the costs of his interpreter.

¶5 Issue Three: Whether the District Court erred when it imposed a ten-percent administration fee on Duong.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6 On October 16, 2012, Highway Patrol Trooper Troy Muri was patrolling on Interstate 94 near Glendive, Montana. Drug Enforcement Agent Richard Smith was also present in the vehicle, as Trooper Muri was familiarizing Agent Smith with the area. The patrol car was stationary alongside the interstate when Duong's vehicle drove past around 9:30 p.m. Trooper Muri pulled onto the road and initially traveled at a high speed before reaching Duong's vehicle and slowing down. Trooper Muri followed the vehicle for nearly two miles and observed Duong's vehicle drive to the right, cross the fog line, and drive onto the rumble strip. Trooper Muri then drove into the passing lane and remained there for approximately twenty seconds before returning to the right-hand lane. While

2

the patrol car was in the passing lane, Duong again crossed the fog line and drove onto the rumble strip. After observing Duong's driving, Trooper Muri activated his emergency lights and stopped Duong.

¶7 Trooper Muri issued a warning citation to Duong. After discussing his travel plans and other recent stops by law enforcement, Trooper Muri asked Duong if he had anything illegal in the vehicle and Duong replied that Muri could "check it out." Duong then consented to a search of a cardboard box in the vehicle and Muri found fourteen pounds of marijuana inside. Duong was arrested and charged with possession of dangerous drugs with intent to distribute.

¶8 Duong was born in Vietnam, but has lived in the United States since 1985. He speaks English as a second language and requested the assistance of an interpreter during his criminal case. In January 2013, Duong moved to suppress the evidence obtained during the search, arguing that Trooper Muri did not have sufficient particularized suspicion to stop the vehicle, as well as other issues not raised in this appeal. On April 18 and 19, 2013, the District Court held an evidentiary hearing and heard from numerous witnesses including Trooper Muri. A patrol car video recording of Duong's activities prior to the stop was also submitted as evidence. Trooper Muri testified that Duong's car was weaving, that he crossed the fog line, and also drove onto the rumble strip. Based on these observations, Trooper Muri believed the driver might be falling asleep, experiencing a medical condition, preoccupied, distracted, or possibly impaired. He also described the recent increase in intoxicated drivers and fatal crashes in the area.

¶9     The District Court denied the motion to suppress and Duong pled no contest to the charges. Judge Simonton sentenced Duong to a six-year deferred sentence and ordered him to pay a number of fees including $800 for his public defender, $325 for his interpreter, and a ten-percent administration fee for fee collection costs.

## STANDARD OF REVIEW

¶10     We review the denial of a motion to suppress to determine whether the district court's findings were clearly erroneous and whether the court correctly applied the findings as a matter of law. *State v. Flynn,* 2011 MT 48, ¶ 6, 359 Mont. 376, 251 P.3d 143 (citations omitted). "Findings of fact are clearly erroneous if they are not supported by substantial credible evidence, if they are based upon misapprehension of the evidence or if review of the record convinces the Court that a mistake has been made." *Flynn,* ¶ 6 (citations omitted).

¶11     Generally, this Court reviews a criminal sentence for legality; that is, whether the sentence falls within the statutory parameters. *State v. Webb*, 2005 MT 5, ¶ 8, 325 Mont. 317, 106 P.3d 521 (citations omitted). "A trial court's statutory interpretation is a question of law, which we review to determine whether it is correct." *Webb*, ¶ 8 (citations omitted).

## DISCUSSION

¶12     *Issue One: Whether the District Court correctly determined that Trooper Muri had particularized suspicion to stop Duong's vehicle.*

¶13     The Fourth Amendment of the United States Constitution and Article II, Section 11 of the Montana Constitution protect against unreasonable searches and seizures.

*Flynn*, ¶ 7.  Under Montana law, an officer "may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA; *State v. Larson*, 2010 MT 236, ¶ 19, 358 Mont. 156, 243 P.3d 1130.  To establish particularized suspicion, the State must show that the officer had "objective data from which an officer can make certain inferences, and a resulting particularized suspicion that the occupant of the motor vehicle is or has been engaged in wrongdoing or was a witness to criminal activity."  *Flynn*, ¶ 7 (citations omitted).  The focus of the inquiry is not whether the driving itself was illegal but rather, "whether the officer could point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."  *Weer v. State*, 2010 MT 232, ¶ 10, 358 Mont. 130, 244 P.3d 311 (citations omitted).  Whether the officer had particularized suspicion is evaluated using the totality of the circumstances available at the time.  *Larson,* ¶ 19 (citations omitted).

¶14   In *Flynn*, this Court rejected the notion that the particularized suspicion analysis can rely on a defendant's after-the-fact explanation of the event.  Rather, the focus is entirely on what facts were available to the officer.  *Flynn*, ¶ 12.  Specifically, the Court rejected the flawed analysis used in *State v. Lafferty*, 1998 MT 247, 291 Mont. 157, 967 P.2d 363, where the court improperly relied on the defendant's after-the-fact explanation that she "crossed the fog line as she observed [the officer's] patrol car come up behind her."  *Flynn*, ¶ 10 (quoting *Lafferty*, ¶ 17).  Instead, we stated that "[a]n officer in the

field need not consider every possible innocent explanation or legal exception before concluding that particularized suspicion exists." *Flynn*, ¶ 11.

¶15 Duong argues that the State has not provided sufficient, objective data to support the traffic stop. Duong further maintains that the reasonable inference should have been that he was alert and concerned when he crossed the fog line in response to the trooper's driving and fast approach from the rear.

¶16 After listening to witnesses and reviewing the video, the District Court concluded that Trooper Muri had particularized suspicion to stop Duong's car. The District Court specifically found that Trooper Muri observed the vehicle cross the fog line three times and drive on the rumble strip twice, as well as weaving in his own lane of traffic. Trooper Muri testified that drivers do not typically drive on the rumble strip for no reason and the behavior signaled that the driver was not attentive and could overcorrect the vehicle. The District Court noted Trooper Muri's observation that he was concerned that the driver was impaired, falling asleep, distracted, or experiencing a medical problem. The District Court found that Trooper Muri's observations, together with his concerns due to increased traffic accidents in the area, were factors to reasonably justify the investigatory stop.

¶17 After our review of the record, we cannot conclude that the District Court's findings of fact were clearly erroneous. They are supported by substantial evidence that the District Court determined to be credible and are not based on a misapprehension of the evidence.

¶18    *Issue Two: Whether the District Court erred by ordering Duong to pay the costs of his interpreter.*

¶19    On September 16, 2013, the District Court sentenced Duong. In addition to the six-year deferred sentence, the court ordered Duong to pay a number of fees including $800 for his public defense attorney and $325 for the costs of the interpreter. Duong argues, and the State agrees, that the District Court exceeded its authority by ordering Duong to pay the interpreter fees. A "district court's authority to sentence a criminal defendant is both defined and constrained by statute." *State v. Krum*, 2007 MT 229, ¶ 11, 339 Mont. 154, 168 P.3d 658. Montana law provides that the Office of the State Public Defender is responsible for interpreter fees incurred at the request of the public defender. Section 47-1-201(5)(a), MCA; *Alkire v. Mun. Court, City of Missoula*, 2008 MT 223, ¶ 14, 344 Mont. 260, 186 P.3d 1288. The District Court erred when it imposed the cost of the interpreter's services on Duong. The Office of State Public Defender is responsible for that expense, not the defendant.

¶20    *Issue Three: Whether the District Court erred when it imposed a ten-percent administration fee.*

¶21    Duong also argues that the District Court erred when it imposed a ten-percent administration fee. The State agrees. In the District Court's written judgment, the court imposed a ten-percent administration fee that was not pronounced during the oral sentencing. Section 46-18-116, MCA, provides that a written judgment must comport with the court's oral pronouncement of sentence. "[I]n the event of a conflict between the oral pronouncement of sentence and the written judgment and sentence, the oral pronouncement of sentence controls." *State v. Kroll*, 2004 MT 203, ¶ 15, 322 Mont. 294,

7

95 P.3d 717 (citations omitted). Here, the oral pronouncement did not include the ten-percent administration fee, but the written sentence did. Therefore, the written sentence must be reformed to match the oral pronouncement of sentence.

¶22 Moreover, the District Court did not have authority to impose such a fee. In addition to the fine for the underlying crime, a court may order a defendant to pay a number of fees and costs including, but not limited to: a fee of ten percent of the amount of restitution ordered for the cost of supervising the payment of restitution (§ 46-18-241, MCA); a surcharge for each felony charged and any additional misdemeanors (§ 46-18-236(1)(b), (c), MCA); a surcharge for court information technology (§ 3-1-317, MCA); and the costs of assigned counsel (§ 46-8-113, MCA).

¶23 Here, the District Court's written sentence imposed a ten-percent administration fee for the collection of all fees. There was no restitution ordered in this case, thus not implicating § 46-18-245, MCA. No Montana statute permits this type of administration fee and the District Court exceeded its statutory authority by imposing it.

¶24 Although the remedy for an illegal sentence varies, in the past we have remanded with instructions to strike when the offending portion affects only a condition of the sentence. *Krum*, ¶ 23. Here, the illegal part of the sentence is only two of several fees imposed on Duong and we remand to strike those provisions. Duong must serve his six-year deferred sentence and is still required to pay the costs of his public defender and other legal fees imposed by the District Court.

¶25 For the foregoing reasons, we conclude that the District Court did not err when it found that Trooper Muri had sufficient facts to form particularized suspicion and legally

8

stopped Duong. The District Court erred when it sentenced Duong to pay the costs of his interpreter and a ten-percent administration fee.

¶26     Therefore, we affirm in part and reverse in part and remand to strike the illegal portions of the sentence.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE
/S/ BETH BAKER
/S/ PATRICIA COTTER